# PLACEMENT AGENT AGREEMENT

THIS PLACEMENT AGENT AGREEMENT (the "**Agreement**") is entered into as of 23 September 2022 | 13:16 PDT (the "**Effective Date**") by and between Western Energy Opportunities II, LLC, a Delaware limited liability company (the "Issuer"), with its principal address at 7683 SE 27th St, Suite 245, Mercer Island, WA, 98040, and Kurt Reuss, doing business as EB5 Marketplace (the "Placement Agent"), with a principal address at 480 Park Ave., New York NY 10022.

## RECITALS

A. The Issuer seeks to conduct an offering (the "**Offering**") to raise up to seventy nine million and two hundred thousand dollars (US$79,200,000) from certain prospective qualified investors (as described below), each of whom intends to apply for approval from the United States Citizenship and Immigration Services ("**USCIS**") for an I-526 Immigrant Petition by Alien Entrepreneur (the "**I-526 Petition**") through the EB-5 Immigrant Investor Program (the "**EB-5 Program**").

B. The Offering will be conducted under a Private Placement Memorandum (the "**Offering Memorandum**"), to be prepared by Issuer subject to review and approval by Placement Agent, to be Supplemented from time to time. The Offering Memorandum, together with the Subscription Agreement to be executed by each Qualified Investor (the "**Subscription Agreement**"), and the other exhibits thereto, are referred to herein as the "**Offering Documents.**" The Issuer has provided the Agent with copies of all Offering Documents for purposes of the Offering.

C. The Issuer intends to make an investment (the "**Investment**") with the proceeds of the Offering to fund a job-creating project (the "**Project**"), as described in the Offering Memorandum, which the Issuer believes will qualify investors in the issuer ("**EB-5 Investors**") for the visa benefits provided under the EB-5 Program.

D. The Placement Agent and the Issuer desire to set forth the terms and conditions upon which the Placement Agent will assist the Issuer, on an non-exclusive basis for up to $79,200,000 of the total amount to be raised in the Offering, with respect to identifying and referring to the Issuer prospective investors upon the terms set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants, and agreements hereinafter contained, the parties hereto hereby agree as follows:

1. Appointment of Placement Agent; Services. Placement Agent is hereby appointed as non-exclusive placement agent on behalf of the Issuer to perform the following services:

(i) The Issuer hereby appoints Placement Agent as non-exclusive placement agent on behalf of the Issuer to solicit and refer to the Issuer qualified investors who are seeking to obtain a U.S. visa pursuant to the EB-5 Program ("**Qualified Investor(s)**"), including: (i) directly to Qualified Investors, who are U.S. Persons as defined in Rule 902(k) ("**U.S. Persons**") of the Securities Act of 1933 (the "**Securities Act**") pursuant to the requirements of Rule 506(c) of Regulation D of the Securities Act; directly to Qualified Investors who are not U.S. Persons, pursuant to the requirements of Regulation S; (ii) indirectly through introductions of Qualified Investors by the Issuer and its affiliates; and, (iii) indirectly through any foreign finders or agents presented by Placement Agent to the Issuer and not disapproved by the Issuer within two Business Days (as defined below) of identification by Placement Agent (each, an "**Approved Selling Group Member**"). All compensation paid to Approved Selling Group Members shall be made by Placement Agent from the fees paid to it by the Issuer, and the Issuer shall not make any payments to any Approved Selling Group Member. The term "**Business Days**" shall mean all days that banks in the State of New York are required to be open. The Placement Agent agrees that it will:

i. Identify, solicit, and refer to the Issuer Qualified Investors in accordance with the requirements of the Securities Act and other applicable federal and state laws of the United States;

ii. Determine their initial suitability for a subscription into the Issuer; and

iii. Consult with the Issuer regarding the regulatory compliance of the Offering in terms of FINRA and SEC rules regarding the marketing of private placement securities by the Placement Agent.

(ii) The Placement Agent will provide to the Issuer the name and address of each Qualified Investor the Placement Agent intends to solicit for investment in the Issuer. The Issuer will, as soon as practicable, but within no more than two (2) Business Days of receipt of the name of each Qualified Investor from the Placement Agent, advise the Placement Agent in writing of its acceptance or rejection of the Qualified Investor. If the Issuer does not respond to the notice of any Qualified Investor within two (2) Business Days of notice by the Placement Agent, the Issuer will be deemed to accept the Qualified Investor. If the Issuer notifies the Placement Agent in writing within two (2) Business Days of receipt of the name of each Qualified Investor from the Placement Agent that any Qualified Investor has already been introduced to the Issuer, then the Issuer is not required to pay the Placement Agent any compensation, and the Placement Agent shall not provide the Qualified Investor with any information regarding the Issuer or the Project.

(iii) The Placement Agent will provide to the Issuer the name and address of each foreign finder or agent that intends to refer for qualified investors to the Placement Agent. The Issuer will, as soon as practicable, but within no more than two (2) Business Days of receipt of the name of each foreign finder or agent from the Placement Agent, advise the Placement Agent in writing of its acceptance or rejection of the foreign finder or agent. If the Issuer does not respond to the notice of any foreign finder or agent within two (2) Business Days of notice by the Placement Agent, the Issuer will be deemed to accept the foreign finder or agent. If the Issuer notifies the Placement Agent in writing within two (2) Business Days of receipt of the name of each foreign finder or agent from the Placement Agent that any foreign finder or agent has already been introduced to the Issuer, then the Issuer is not required to pay the Placement Agent any compensation, and the Placement Agent shall not provide the foreign finder or agent with any information regarding the Issuer or the Project. Any and all Qualified Investors introduced by the approved foreign finder or agent shall be only attributable to the Placement Agent and the Issuer will be obligated to pay compensation to the Placement Agent.

(iv) The Issuer agrees that it will, as a condition of acceptance by Placement Agent of its appointment by Issuer under this Agreement, submit all information required for Placement Agent to conduct an initial due diligence review of the Issuer, its management, the sponsors of the Offering (as defined by regulations of the SEC and USCIS), the Project and all other information that the Placement Agent determines to be relevant to the Offering, in the Placement Agent's reasonable discretion. The due diligence review will include background checks on all control persons and a complete review of the Offering Documents and supporting documents for the Offering and the Project. The Placement Agent shall have a right to determine not to proceed with an Offering if the Placement Agent determines that the results of its due diligence review are not satisfactory. In that event, the Placement Agent will notify the Issuer that it has determined to terminate this Agreement, and thereafter neither the Placement Agent or the Issuer will have any further obligations under this Agreement.

(v) Subject to the Placement Agent's satisfactory completion of due diligence as set forth in Section 1.c. hereof and the performance by the Issuer of its obligations hereunder, Placement Agent hereby accepts such appointment and agrees on the terms and conditions set forth herein to use such efforts as Placement Agent deems appropriate in its sole discretion to find Qualified Investors for Interests during the term hereof.

2. <u>The Offering; Sale of Issuer Interests.</u>

1. Placement Agent will contact Qualified Investors interested in making an EB-5 Program subscription into the Issuer and will deliver the Offering Documents to the Qualified Investor for his/her preliminary consideration. Placement Agent will track the name and address of each such Qualified Investor to whom Placement Agent delivers the Offering

Documents, as well as the date the Offering Documents are delivered, and will provide such list on a periodic basis to the Issuer.

2. The Placement Agent will not offer Issuer subscriptions on the basis of any communications or documents relating to the Issuer other than the information to be found in the Offering Documents, or any marketing material that has been pre-approved by the Issuer prior to its use.

3. Placement Agent will offer Issuer subscriptions to Qualified Investors only, as defined above.

4. The Issuer will be responsible for the timely filing of any notice with applicable U.S. or non-U.S. securities agencies or commissions with respect to the Offering.

5. The Issuer will provide, promptly and at no cost to Placement Agent, a reasonable quantity of copies of the Offering Documents (or digital files, as agreed-upon) and such other materials as Placement Agent is required to provide to Qualified Investors under this Agreement. If any Offering Documents are amended or supplemented, the Issuer will promptly notify Placement Agent, and provide copies of such amendments or supplements in accordance with the preceding sentence.

6. All subscriptions in the Issuer resulting from offers made by Placement Agent will be subject to the Issuer's final review and approval. No Qualified Investor who was previously identified by the Placement Agent to the Issuer and not rejected by the Issuer within two (2) Business Days of notice by the Placement Agent shall be rejected unless the Issuer determines that, based on the Offering Documents completed and delivered by the Qualified Investor, that person does not meet the qualification requirements for investment in the Offering. The Issuer shall notify the Placement Agent regarding the Issuer's rejection of any investor referred by the Placement Agent within two (2) Business Days of delivery of the investor's completed subscription documents. Failure to notify the Placement Agent of rejection of any investor referred by the Placement Agent within two (2) Business Days of delivery of the investor's subscription documents shall be deemed approval of the investor. Without limiting the generality of the foregoing, the Issuer agrees that any investment in the Offering by children or parents of the Qualified Investor shall be deemed as having been introduced to the Issuer by the Placement Agent.

7. The Placement Agent shall disclose the existence of this Agreement, and the nature of the financial arrangements made herein by and between the Issuer and the Placement Agent, to each Qualified Investor prior to such Qualified Investor executing a Subscription Agreement in the form of a Disclosure and Acknowledgement of Solicitation (the "**Disclosure Statement**") as described in Section 6(e) below (see "**EXHIBIT 1**").

8. If the Placement Agent refers at least one Qualified Investor who invests in the Issuer, the Issuer shall send copies of any investor reports to the

Placement Agent concurrently with the date such reports are sent to Qualified Investors.

3. Investor Placement Fees. The Issuer shall pay Finalis Securities LLC on behalf of the Placement Agent a fee of the amount paid by the Qualified Investor, less $7,500, from the Administrative fee to be charged by the Issuer ("**Investor Placement Fee**") for each Qualified Investor introduced by the Placement Agent, to be paid from the Administration fee paid to the Issuer by the Qualified Investor, within ten (10) days of the Investor's receipt notice from USCIS (Form I-797C) of such Investor's I-526 Petition. Any discount to the Administration Fee negotiated by the Qualified Investor shall reduce the Investor Placement Fee paid to Placement Agent by an equivalent amount. The Issuer's obligation to pay Finalis Securities LLC on behalf of the Placement Agent under this Section 3 for referrals of Qualified Investors made during the Term shall survive the termination or expiration of this Agreement. The Investment Placement Fees are not refundable under any circumstances.

4. Additional Fees. In addition to the Initial Fees and Investor Placement Fees, the Issuer shall pay to Finalis Securities LLC on behalf of the Placement Agent for each Qualified Investor introduced by the Placement Agent who invests in the Issuer an additional fee equal to the following:

1. Annual Fee. An annual fee (the "**Annual Fee**"), payable for five years, on each anniversary date of the filing of such Qualified Investor's I-526 Petition, equal to three and a half percent (3.5%) of the total capital invested by the Qualified Investor in the Issuer. The Issuer shall pay the Annual Fee from sources other than capital contributions of EB-5 Investors. The Annual Fee is not refundable.

DS
GN
Initials of Issuer
DS
Initials of Placement Agent

5. Term.

1. The Placement Agent shall provide its services and the Issuer shall engage the Placement Agent for such purposes commencing on the Effective Date and continuing for a period of six (6) months (the "**Term**"). The Term shall automatically renew for successive six-month periods unless either party provides the other party with notice at least 30-days prior to the end of the then current Term of its intent to terminate this Agreement. Notwithstanding the foregoing, this Agreement may be terminated by either party immediately on written notice to the other party hereto (i) on the

dissolution, insolvency, or bankruptcy of a party; or (ii) upon a breach by the other party of any of its obligations under this Agreement.

1. If, at any time prior to the termination of this Agreement and for a period of one year after termination of this Agreement by Issuer for any reason other than a material breach by the Placement Agent, the Issuer enters into a Subscription Agreement with one or more Qualified Investors introduced to the Issuer by the Placement Agent or an approved Selling Group Member, then the Issuer shall pay the full amount of compensation payable to the Placement Agent under Sections 4 and 5 for each such Qualified Investor.

2. Representations, Warranties, and Agreements of the Placement Agent. The Placement Agent represents and warrants to and agrees with, the Issuer as follows:

1. The Placement Agent is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation or organization and the Placement Agent has full power and authority under applicable laws, rules, or regulations to engage in the activities contemplated under this Agreement.

2. The execution, delivery, and performance of this Agreement have been duly authorized by all necessary actions of the Placement Agent, and upon the execution and delivery hereof, this Agreement will constitute a valid, binding, and enforceable obligation of the Placement Agent.

3. The execution, delivery, and performance of this Agreement, the incurrence of the obligations set forth herein and the consummation of the transactions contemplated herein will not constitute a breach of or default under any agreement or instrument by which Placement Agent is bound, or to which any of its assets is subject, or any order, rule, or regulation applicable to it or of any court or any governmental body or administrative agency having jurisdiction over it.

4. The Placement Agent is permitted under all applicable laws and regulations to receive the compensation set forth in this Agreement.

5. The Placement Agent will comply with all requirements of FINRA and the SEC in connection with its activities under this Agreement and will be responsible for supervising the activities of all Approved Selling Group Members to assure their compliance with all requirements of FINRA and the SEC in connection with their activities pursuant to this Agreement.

6. In accordance with SEC Rule 10b-10(a)(2)(i)(D) the Placement Agent represents and warrants that in connection with any solicitations by the Placement Agent, the Placement Agent will deliver to each Qualified Investor prior to the Qualified Investor's investment into the Issuer, a copy of the Disclosure Statement attached hereto as Exhibit 1.

7. Neither the Placement Agent nor any of the "**covered persons**" related to the Placement Agent (as defined in Securities and Exchange Commission Rule 506(d) ("**Rule 506(d)**"), is subject to any disqualifying events under Rule 506(d).

8. Neither the Placement Agent nor any Approved Selling Group Member is a disqualified person under Section H(i) of the EB-5 Reform and Integrity Act of 2022 (the "RIA").

9. Within thirty (30) days following the date that the Secretary of Homeland Security issues regulations and application forms providing for the registration of "promoters" under the RIA, the Placement Agent shall, and shall require all of the Approved Selling Group Members to, file for registration under such regulations.

10. The Placement Agent shall, and shall require all of the Approved Selling Group Members to, accurately represent the visa process to Qualified Investors.

11. The Placement Agent shall use its commercially reasonable efforts, and shall require all of the Approved Selling Group Members to use their commercially reasonable efforts to, comply with any requirements applicable to them under SEC regulations, FINRA regulations, and the regulations adopted by the Secretary of Homeland Security under the RIA. The Placement Agent shall provide Issuer with all necessary information it requires to comply with US securities laws, immigration laws and any other applicable laws and regulations that apply to Issuer.

12. The Placement Agent shall, and shall require all of the Approved Selling Group Members to, complete and deliver to the Issuer any questionnaires requested by the Issuer for the purpose of compliance with any requirements applicable to them under the regulations adopted by the Secretary of Homeland Security under the RIA.

13. The Placement Agent shall require all Approved Selling Group Members to represent that they are in compliance with all applicable laws under the jurisdictions in which they solicit Qualified Investors.

3. Representations, Warranties, and Agreements of the Issuer. The Issuer represents and warrants to the Placement Agent and agrees with Placement Agent as follows:

1. The Issuer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and it has the full power and authority under applicable laws, rules, or regulations to conduct its business as contemplated by the Offering Documents.

2.  The execution, delivery, and performance of this Agreement have been duly authorized by all necessary action of the Issuer and its manager or general partner, and upon the execution and delivery hereof, this Agreement will constitute a valid, binding, and enforceable obligation of each of the foregoing.

3.  The execution, delivery, and performance of this Agreement, the incurrence of the obligations set forth herein, and the consummation of the transactions contemplated herein and in the Offering Documents, including subscriptions into the Issuer, will not constitute a breach of or default under any agreement or instrument by which the Issuer is bound, or to which any of its assets is subject, or any order, rule or regulation applicable to it of any court or any governmental body or administrative agency having jurisdiction over them.

4.  There is not pending or, to the best knowledge of the Issuer, threatened any action, suit or proceeding before or by any court or other governmental body to which the Issuer or any of its affiliates is a party, or to which any of their assets is subject, which might reasonably be expected to result in any material adverse change in the condition, financial or otherwise, business, or prospects of the Issuer. None of the Issuer nor any of its affiliates, has received any notice of an investigation regarding non-compliance by the Issuer or any of its affiliates with applicable laws, rules, or regulations and the Issuer will provide the Placement Agent with notice of any material investigation that could have a material effect on the ability of the Issuer to perform its obligations under this Agreement or to continue to conduct the Offering or its business as currently conducted.

5.  The Offering Documents, as of the date hereof and at any subsequent time during the term of this Agreement, do not and will not contain any untrue statement of a material fact, or omit to state any material fact required to be stated therein or necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading. Any forecasted financial, market, or industry information contained in the Offering Documents is based on reasonable good faith estimates of the Issuer. If any statement were to become untrue or if an omission of a material fact is discovered, the Issuer shall, if and as otherwise required by applicable securities laws of the United States, supplement, amend, or restate the relevant Offering Documents or otherwise remove such untrue statement from the Offering Documents or disclose such material facts to Placement Agent and the Qualified Investors.

6.  The interests in the Issuer offered for sale in the offering have been duly authorized for issuance and sale, and, when issued and paid for in the amounts and for the consideration described in the Offering Documents, will be entitled to the rights and subject to the restrictions and conditions contained in the organizational documents of the Issuer, as may be amended or supplemented from time to time; no investor will be personally liable for

the debts of and claims against the Issuer by the mere reason of being an investor; and all necessary action required to be taken for authorization, issuance, and sale of the interests has been validly and sufficiently taken.

7. The Issuer is not required to be registered as an investment company under the 1940 Act.

8. The Issuer will extend to all Qualified Investors referred by the Placement Agent the opportunity prior to each Qualified Investor's subscription to ask questions of, and receive answers from, the Issuer concerning the interests and the terms and conditions of the Offering, and to obtain any information that such Qualified Investors may consider necessary in making an informed investment decision.

9. The Issuer acknowledges that in performing the services contemplated hereby, the Placement Agent will be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been provided to it by, or on behalf of, the Issuer, and that the Placement Agent has no obligation to verify the accuracy or completeness of any such information and will have no liability to the Issuer or any third party for any information contained in the Offering Documents.

10. The representations and warranties set forth in this Agreement are continuing during the term of this Agreement and the Issuer agrees to notify Placement Agent promptly in writing if at any time during the term of this Agreement, any such representation or warranty becomes inaccurate or untrue and of the facts related thereto.

11. The Issuer's general partner or manager is not, and is not required to be, an investment adviser registered under the Investment Advisers Act of 1940, as amended (the "**Advisers Act**").

12. The Issuer represents that it is aware of the United States and applicable international laws and regulations relating to currency reporting and money laundering, including, but not limited to (i) the United States Bank Secrecy Act and implementing regulations; (ii) the USA PATRIOT Act of 2001 (the "**PATRIOT Act**") and implementing regulations, and (iii) all applicable International AML laws and regulations. To ensure compliance with those laws, rules and regulations, the Issuer represents that it will cooperate with and assist the Placement Agent to (x) implement its an anti-money laundering program reasonably designed to comply with such laws and regulations; (y) conduct its Customer Identification Program ("**CIP**"), which requires the performance of CIP due diligence in accordance with applicable USA Patriot Act requirements and regulatory guidance; and, (z) conduct its anti-money laundering program, which contains processes, procedures, and systems reasonably designed to ensure compliance with economic sanctions programs administered by the U.S. Department of the Treasury, Office of Foreign Assets Control ("**OFAC**"), including prohibitions set forth in the list of

Specially Designated Nationals and Blocked Persons (the "**SDN List**"), as well as sanctions programs administered by the European Union, United Nations, and World Bank, as applicable.

13. Neither the Issuer nor any of the "**covered persons**" related to the Issuer (as defined in Securities and Exchange Commission Rule 506(d) is subject to any disqualifying events under Rule 506(d).

14. Neither the Issuer nor any of its affiliated persons is a disqualified person under Section H(i) of the RIA.

15. The Issuer shall use its commercially reasonable efforts to, and shall cause all of its affiliated persons to use their commercially reasonable efforts to, comply with all requirements applicable to it under SEC regulations and the regulations adopted by the Secretary of Homeland Security under the RIA. The Issuer shall provide Placement Agent with all necessary information it requires to comply with US securities laws, immigration laws and any other applicable laws and regulations that apply to Placement Agent.

16. The Issuer acknowledges that Placement Agent enters into this Agreement in reliance on the representations, warranties, and agreements of the Issuer contained herein.

4. Indemnification.

1. The Issuer and its affiliates, Western Energy Development II LLC, and Western Energy Regional Center LLC will, jointly and severally, indemnify, hold harmless, and defend Placement Agent, its affiliates and their respective officers, directors, partners, members, shareholders, employees and agents from and against any losses, claims, damages or liabilities (or actions in respect thereof) ("**Covered Claims**") arising directly out of (i) the offer or sale of subscription by the Issuer or the management or affairs of the Issuer; (ii) any untrue statement of material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in any Offering Documents or in any advertising or promotional material approved, published, or provided to the Placement Agent by or on behalf of the Issuer, or accurately derived from information approved, published, or provided to the Placement Agent by or on behalf of the Issuer, (iii) any violation of any law, rule or regulation relating to the registration or qualification of the Issuer or Offering, (iv) any material breach by the Issuer or its manager or general partner of any representation, warranty, or agreement contained in this Agreement, (v) any violation of any law, rule, or regulation relating to the operation of the Issuer or (vi) any willful misconduct or gross negligence by the Issuer or its affiliates in the performance of, or failure to perform, its obligations under this Agreement, except to the extent that any such Covered Claim is caused by a material breach by the Placement Agent of this Agreement or the willful misconduct or gross negligence of the Placement

Agent or its affiliates or agents appointed by it to solicit Qualified Investors in the performance of, or failure to perform, its obligations under this Agreement.

2.  The Placement Agent will indemnify, hold harmless, and defend the Issuer, its affiliates and respective officers, directors, partners, members, shareholders, employees and agents from and against any Covered Claims arising directly out of (i) the offer or sale of the subscriptions by the Placement Agent or any affiliates or agents appointed by the Placement Agent; (ii) any material breach by the Placement Agent or any of its affiliates or agents appointed by the Placement Agent of any representation, warranty, or agreement contained in this Agreement, or (iii) any willful misconduct or gross negligence by the Placement Agent or any of its affiliates or agents appointed by the Placement Agent in the performance of, or failure to perform, the obligations of the Placement Agent under this Agreement, except to the extent that any such Covered Claim is caused by a material breach by the Issuer of this Agreement or the willful misconduct or gross negligence of the Issuer and/or its manager or general partner or their affiliates in the performance of, or failure to perform, their obligations in connection with this Agreement. The Placement Agent's liability shall be limited to the amount of fees paid by the Issuer to Placement Agent under this Agreement during the preceding 12 month period. Notwithstanding anything to during the contrary herein, the applicable party will not be liable to indemnify an indemnified person pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Covered Claims resulted from the gross negligence, bad faith or willful misconduct of such indemnified person; provided, further, that such indemnification shall be limited to the value of amounts actually paid by the Issuer and actually received by Placement Agent hereunder during the preceding 12 month period.

5.  <u>Confidentiality</u>.

1.  The Placement Agent acknowledges that during the Term of this Agreement the Placement Agent will have possession of or access to Confidential Information relating to the business of the Issuer and the Project, including, but not limited to, sales and marketing information, Offering Documents, financial information, business plans, or other material embodying trade secrets, or other information or technical or business information of the Issuer or the Project (collectively, "**Confidential Information**"). The Placement Agent agrees at all times from and after the Effective Date to exercise due care and to keep in confidence and not disclose or otherwise exploit Confidential Information.

2.  The Issuer hereby acknowledges that it may receive written and/or oral information, including the names of the Qualified Investors (such

information being referred to in this Section 10 as "**Customer Information**") from the Placement Agent regarding those Qualified Investors that subscribe to interests in the Issuer and that all such Customer Information has been or will be furnished subject to the provisions of this Section 10. The Issuer agrees that it shall use, and that all of its current and former employees, officers, directors, representatives, and agents and other entities providing services with respect to the Issuer, shall use the Customer

Information solely in connection with the subscription for interests by each Qualified Investor into the Issuer, including the booking of such subscriptions; communicating with such Qualified Investors; the administration of the Issuer and the performance of their respective roles with respect to the Issuer and the Offering, and for no other purpose whatsoever. Furthermore, the Issuer agrees that it will not disclose or make available, and will ensure that none of its employees, officers, or directors, discloses or makes available, any Customer Information to any person or entity that does not have a need to know such Customer Information in connection with the foregoing.

6. Expenses. All expenses incurred during the performance of Placement Agent's services, including but not limited to, lodging, post mail, email, photo copying, phone, all travel expenses and meal allowances, meeting and conference rooms shall be the sole responsibility of Placement Agent.

7. Arbitration. This agreement contains a predispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:

1. All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

2. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

3. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

4. The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

5. The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.

6. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

7. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by FINRA. The number of arbitrators shall be one. The place of arbitration shall be New York, New York, and New York law shall apply. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The parties agree to submit to the personal jurisdiction of the state and federal courts located in the State of New York, and consent to service of process in any manner authorized by New York law. Should any legal proceeding be necessary to construe or enforce the provisions of the Agreement, then the prevailing party in such legal action shall be entitled to recover all court costs, reasonable attorney fees, and costs of enforcing or collecting any judgment awarded.

8. Notice. Any notices given under this Agreement shall be in writing and sent to the respective party at such party's address as set forth above or such other address as requested in writing. Any notice shall be deemed to have been given (a) when delivered in person, (b) one business day after deposit with a nationally recognized overnight courier service, (c) two business days after being deposited in the United States mail postage prepaid, first class, registered, or certified mail, or (d) the business day on which it is sent and received by facsimile or electronic transmission with evidence of receipt.

9. Waiver of Breach. No waiver of any provision of this Agreement by either party shall be valid unless agreed to by the other party in writing. The waiver by either party of a breach by the other party of any provision hereof shall not operate or be construed as a waiver of any subsequent breach.

10. Assignment. This Agreement may not be assigned by either party without the prior written consent of the other party; provided, however, that in the event that Kurt Reuss terminates his registration with Finalis Securities LLC and registers with another registered securities broker-dealer, the Issuer agrees that Kurt Reuss may cause this Agreement to be assigned to such successor registered securities broker-dealer, without further consent of the Issuer.

11. Entire Agreement; Modification. This Agreement is the entire agreement between the parties, and supersedes all prior agreements, oral or written, if any between the parties, and there are no other understandings, representations, or warranties between the parties. This Agreement may not be modified except by an agreement in writing signed by the party against whom enforcement of any change, modification, extension, or discharge is sought.

12. Severability. If any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, invalid, or unenforceable, such provision shall be construed and enforced as if it had been more narrowly drawn so as not to be illegal, invalid, or unenforceable, and such illegality, invalidity, or

unenforceability shall have no effect upon and shall not impair the enforceability of any other provision of this Agreement.

13. Limitation of Authority; Status of Parties. The Placement Agent's relationship with the Issuer is that of an independent contractor and not an employee or representative of the Issuer. The Placement Agent shall not have authority to negotiate for or bind the Issuer or otherwise execute any document on behalf of the Issuer, nor shall the Placement Agent hold itself out to the public or any third party as possessing such authority.

14. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to principles of conflicts of laws). Each party is, and at all times has been, in material compliance with any and all requirements of any federal, state or local law.

15. Survival. The rights and obligations of the parties set forth in Sections, 3, 4, 8, 9, 11, 12, 16 and 18 shall survive the termination or expiration of this Agreement.

16. Counterparts. This Agreement may be executed in counterparts (including facsimile or electronic mail copies), all of which, when taken together, will constitute one and the same instrument.

17. Registered Broker-Dealer. The person under the heading "Placement Agent" on the signature pages to this Agreement (the "Representative") is a registered representative of Finalis Securities LLC, a Delaware limited liability company ("Finalis"). Finalis is a broker-dealer registered with the U.S. Securities and Exchange Commission and a member of the Financial Industry Regulatory Authority, Inc. ("FINRA"). The Representative and Finalis shall be deemed included within the meaning of "Placement Agent" for all purposes hereunder, including the indemnification provisions and the annexes attached hereto. If, in the sole judgment of Finalis, it is required under applicable law, rule or regulation or is otherwise necessary that any services, transaction or other matter contemplated by this Agreement be conducted through a registered broker-dealer or FINRA member, then, with no further action required by any party hereto, the applicable rights and interests of the Representative (including the right to receive any fees hereunder and all rights to indemnification) will be deemed hereby automatically assigned and transferred to Finalis, and Finalis shall be deemed to have assumed all duties of the Representative and be acting through the Representative pursuant to this Agreement. The Representative will manage the Transaction whether it remains with the Representative or is assigned to Finalis hereunder. This section shall survive the termination, expiration or completion of Advisor's engagement under this Agreement. Should any transaction have to be conducted by a U.S. registered broker-dealer, in the sole judgment of Finalis, then (i) all billings will be made by, and all payments hereunder remitted to, Finalis from that time forward in connection with such transaction to Finalis' wire instructions set forth in Exhibit 2 attached hereto, and (ii) the Issuer acknowledges and agrees to make changes as Finalis may require to any materials to be circulated to potential Transaction

DocuSign Envelope ID: F22677BC-9BC4-45B1-8993-56061F68DEEA

counter-parties or make additional disclosures to such counterparties to comply with any laws, rules or regulations.

[Signature Page Follows]

PLACEMENT AGENT AGREEMENT Signature Page

In witness whereof, the parties hereto have executed this Agreement as of the date first written above.

| **Issuer** | **Placement Agent** | **Broker Dealer** |
|---|---|---|
| DocuSigned by: Gregory Neher 87FFC85083AD4E0... | DocuSigned by: Kurt Reuss 751E2E6705704A2... | DocuSigned by: Brad Ziemba B8C9402D583E47D... |
| Gregory Neher<br>Manager<br>Western Energy Opportunities II, LLC | Kurt Reuss<br>Finalis Securities, LLC<br>eb5Marketplace | Brad Ziemba<br>Chief Compliance Officer<br>Finalis Securities, LLC |
| **Date:** 13 September 2022 \| 10:40 PDT | **Date:** 13 September 2022 \| 09:52 PDT | 23 September 2022 \| 13:16 PDT |

| **Issuer Affiliate (section 8 only)** | **Issuer Affiliate (section 8 only)** |
|---|---|
| DocuSigned by: Gregory Neher 87FFC85083AD4E0... | DocuSigned by: Gregory Neher 87FFC85083AD4E0... |
| Gregory Neher<br>[Title] Manager<br>Western Energy Development II LLC | Gregory Neher<br>[Title] Manager<br>Western Energy Regional Center LLC |
| **Date:** 13 September 2022 \| 10:40 PDT | **Date:** 13 September 2022 \| 10:40 PDT |

**Exhibit A**

**Solicitor's Disclosure Statement**

This statement is being provided to describe the relationship between Kurt Reuss ("**Broker**") and Western Energy Opportunities II, LLC ("**Issuer**").

1. Broker is a registered representative of Finalis Securities LLC, a Delaware limited liability company that is a registered broker-dealer with the U.S. Securities and Exchange Commission (the "**SEC**").

2. Issuer is a Delaware limited liability company, with its principal office in 16904 Juanita Drive NE, Suite 269, Kenmore, WA 98028. Issuer is conducting an offering (the "**Offering**") to raise up to seventy-nine million two hundred thousand dollars (US$79,200,000) from certain prospective qualified investors, each of whom intends to apply for approval from the United States Citizenship and Immigration Services ("**USCIS**") for an I-526 Immigrant Petition by Alien Entrepreneur (the "**I-526 Petition**") through the EB-5 Immigrant Investor Program (the "**EB-5 Program**"). The Offering is being conducted under a Private Placement Memorandum (the "**Offering Memorandum**"), currently dated July 15, 2022, to be Supplemented from time to time. The Offering Memorandum, together with the Subscription Agreement to be executed by each Qualified Investor (the "**Subscription Agreement**"), and the other exhibits thereto, are referred to herein as the "**Offering Documents**."

3. Broker and Issuer have signed a written contract, under which Broker has agreed to provide private placement services to Issuer in connection with the Offering. Those services include identifying prospective investors, meeting with representatives of those investors and referring those investors to Issuer that may be interested in investing in the Fund.

4. Broker is not affiliated with and has no relationship with Issuer other than the relationship created by the contract between Broker and Issuer.

5. Issuer has agreed to pay Broker, for the private placement services provided by Broker the following fees with respect to each new and existing capital account of each investor in the Fund referred by Broker: the amount paid by the Qualified Investor, less $10,000, from the Administrative fee paid to the Issuer by the Qualified Investor, less any discount to the Administration Fee negotiated by the Qualified Investor. Additionally, the Issuer shall pay to Finalis Securities LLC an annual fee of $28,000 payable for five years on each anniversary date of the filing of such Qualified Investor's I-526 Petition. The Issuer shall pay the Annual Fee from sources other than capital contributions of EB-5 Investors. Broker has agreed to pay [TBD] a finder's fee of $[TBD] for referring the below named Investor to Broker.

6. Issuer and Broker have also agreed to indemnify each other for certain liabilities in connection with the services of Broker.

7. The fees paid to Broker by Issuer are not charged back to investors who have been referred by Broker. Fees paid by investors referred to Issuer by Broker may be higher or lower than fees paid by other investors in Issuer depending on any discounts negotiated with respect to Administrative Fees payable by investors.

**Acknowledgment of Receipt**

The investor named below hereby acknowledges receipt of the Offering Documents and a copy of this Disclosure Statement describing the arrangements between Broker and Issuer.

**Name of Prospective Investor:** ____________________________

Signature: ____________________________

Date: ____________________________

**Exhibit B**

**WIRE INSTRUCTIONS**

Unless otherwise specified in a separate written agreement by and among the parties hereto, all fees payable to Placement Agent under this Agreement are required to be delivered to the following bank account:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | EB5 Marketplace |
| Account Number: | 9808613771 |
| Routing Number (ACH + wires): | 084106768 |