UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESTERN ENERGY OPPORTUNITIES II, LLC, d/b/a WESTERN ENERGY REGIONAL CENTER,

        Plaintiff,

v.

FINALIS SECURITIES, LLC; EB5 ENERGY FUND I, LP d/b/a EB5 MARKETPLACE; EB5 ENERGY HOLDINGS, LLC; RUPY CHEEMA; KURT EDWARD REUSS; and ABC CORPORATIONS 1 through 10,

        Defendants.

> **MEMO ENDORSED**
>
> Defendant Finalis Securities, LLC is directed to respond by May 1, 2025.
>
> SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: April 10, 2025
> New York, New York

Case No. 24-cv-2565(ER)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR LEAVE TO AMEND THE COMPLAINT**

Michael Steinmetz
GARSON SEGAL STEINMETZ FLADGATE LLP
164 West 25th Street, 11th Floor
New York, New York 10001
Tel: (212) 380-3623
Email: ms@gs2law.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD............................................................................................................... 2

PROCEDURAL BACKGROUND........................................................................................... 3

ARGUMENT............................................................................................................................ 4

    A.   The Court Overlooked Allegations Showing Finalis's Active Involvement Under the DTSA. ................................................................................................................................ 4

    B.   The DTSA Does Not Require Direct "Use" or "Theft" Where the Defendant Facilitates and Benefits from Misappropriation................................................................................. 7

    C.   Leave to Amend. .......................................................................................................... 8

CONCLUSION...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
  666 F. Supp. 3d 328S.D.N.Y. 2023) ........................................................................................ 7

*Cresci v. Mohawk Valley Cmty. Coll.*,
  693 F. App'x 21(2d Cir. 2017) ................................................................................................ 9

*eShares, Inc. v. Talton*,
  727 F. Supp. 3d 482 (S.D.N.Y. 2024) ..................................................................................... 7

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................................ 8

*Henry v. Fox News Network LLC*,
  2022 U.S. Dist. LEXIS 169928 (S.D.N.Y. Sep. 20, 2022) ...................................................... 8

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ...................................................................................................... 3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) .................................................................................................... 9

*Medidata Sol. Inc. v. Veeva Sys. Inc.*,
  No. 17 Civ. 589 (LGS), 2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018) .................................. 4

*Mendez-Caton v. Carribean Family Health Center*,
  340 F.R.D. 60 (E.D.N.Y. Jan. 28, 2022) ................................................................................. 3

*Parrish v. Sollecito,*
  253 F. Supp. 2d 713 (S.D.N.Y. 2003) ..................................................................................... 3

*Q–Co Indus., Inc. v. Hoffman,*
  625 F. Supp. 608 (S.D.N.Y. 1985) .......................................................................................... 5

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.,*
  No. 15 Civ. 211 (LGS) (RLE), 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ....................... 5

*Tchatat v. City of New York,*
  No. 14-cv-2385, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015) ........................................... 2, 4

*United States v. Concentrated Phosphate Export Ass'n*,
  393 U.S. 199 (1968) ................................................................................................................ 7

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ............................................................................................................... 7

**Statutes**

18 U.S.C. § 1836 ............................................................................................................................ 3

18 U.S.C. § 1839(5) ............................................................................................................... 4, 7, 8

18 U.S.C. § 1839(5)(A) .................................................................................................................. 4

18 U.S.C. § 1964 ............................................................................................................................ 3

Fed. R. Civ. P. 15(a) ...................................................................................................................... 8

**PRELIMINARY STATEMENT**

Western Energy Opportunities II, LLC d/b/a Western Energy Regional Center ("Plaintiff") respectfully moves for reconsideration of the Court's March 26, 2025 Opinion and Order (Dkt. 77, the "Order") dismissing Plaintiff's claims under the Defend Trade Secrets Act ("DTSA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") as to Defendant Finalis Securities LLC ("Finalis"). While Plaintiff appreciates the Court's careful analysis, reconsideration is warranted because the Order appears to have overlooked key factual allegations in the First Amended Complaint ("FAC") that, when credited and viewed in the light most favorable to Plaintiff, demonstrate Finalis's active participation in the misappropriation of trade secrets that caused Plaintiff substantial economic harm.

This is not a case of simple supervisory failure or negligence. As alleged in the FAC, Finalis did not merely provide brokerage services to Plaintiff or allow one of its registered representatives, Kurt Reuss, to act independently. Rather, Finalis signed the Placement Agent Agreement ("PAA") as broker-dealer, expressly assumed duties under the agreement, and agreed to be treated as the "Placement Agent" for all purposes, including the receipt, use, and protection of confidential business information provided by Plaintiff in connection with its $79.2 million EB-5 oil and gas offering. Finalis lent its licensure, name, and FINRA membership to the transaction, and served as the gatekeeper through which Plaintiff's proprietary offering structure, marketing materials, investor lists, and financial modeling were disclosed—on the promise of due diligence, compliance, and confidentiality. (*See* FAC ¶¶ 43–49.)

Plaintiff's trade secrets were not misappropriated in a vacuum. Finalis's involvement was essential to the scheme. As detailed in the FAC, it was Finalis that introduced and legitimized Reuss and Cheema, facilitated their access to Plaintiff's confidential materials, and permitted the misappropriation to continue unimpeded even after Plaintiff reported the theft. Worse still, Finalis

1

turned around and entered into an agreement with the very same parties—Reuss, Cheema, and the EB5 Entities—to serve as the broker-dealer for a directly competing EB-5 oil and gas offering structured using Plaintiff's own protected materials. (FAC ¶¶ 53–56, 84–86.) In other words, Finalis not only enabled the theft, it actively benefited from it—earning transactional fees while Plaintiff's $79.2 million opportunity was gutted. (FAC ¶¶ 80–81, 86–90.).

The DTSA's definition of "misappropriation" expressly includes disclosure or use of a trade secret by a person who knew or had reason to know it was acquired through improper means. 18 U.S.C. § 1839(5). Plaintiff alleges precisely that: Finalis knew that Reuss and Cheema had obtained Plaintiff's materials under the guise of due diligence, and yet it joined forces with them to market and promote a nearly identical offering—using Plaintiff's model, investor data, and tax strategies to attract foreign EB-5 capital under the cover of Finalis's regulatory license. (FAC ¶¶ 72–78.) These allegations are not speculative; they are supported by photos of competing booths, copies of identical brochures, and ongoing profit-sharing arrangements.

Finally, should the Court decline to reinstate the claims on reconsideration, Plaintiff respectfully seeks leave to amend to further amplify and detail Finalis's involvement in the alleged scheme.

## LEGAL STANDARD

"Reconsideration is appropriate when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Tchatat v. City of New York,* No. 14-cv-2385, 2015 WL 6159320, at *1 (S.D.N.Y. Oct. 20, 2015) (internal quotation marks omitted).

A motion for reconsideration may be granted where the moving party shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.

1995). Reconsideration may also be "granted to correct clear error, prevent manifest injustice, or review the court's decision in light of the availability of new evidence." *See Mendez-Caton v. Carribean Family Health Center*, 340 F.R.D. 60, 74 (E.D.N.Y. Jan. 28, 2022) (Merkl, J.) (emphasis added) (citing *Parrish v. Sollecito,* 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).

## PROCEDURAL BACKGROUND

Plaintiff filed its First Amended Complaint (Dkt. 41) on July 23, 2024, alleging federal RICO violations (18 U.S.C. § 1964), misappropriation of trade secrets under both the DTSA (18 U.S.C. § 1836) and New York common law, and multiple state-law claims. On August 14, 2024, Defendant Finalis moved to dismiss the FAC (Dkt. 49). Plaintiff opposed, highlighting specific allegations in the FAC that show Finalis's active role in the scheme (Dkt. 52).

On March 26, 2025, the Court granted Finalis's motion to dismiss the RICO and DTSA claims, holding that (1) the FAC failed to allege Finalis's participation in a RICO "enterprise" or predicate acts, and (2) the FAC did not show that Finalis itself misappropriated trade secrets. (Order at 9-18.). As a result, the Court declined supplemental jurisdiction over the state-law claims. Plaintiff respectfully submits that the Court overlooked significant allegations that, when credited, plausibly demonstrate Finalis's direct involvement in the misappropriation and in the ongoing enterprise to divert investors and exploit Plaintiff's trade secrets.

**ARGUMENT**

**A.     The Court Overlooked Allegations Showing Finalis's Active Involvement Under the DTSA.**

Plaintiff respectfully seeks reconsideration of the Court's decision dismissing its Defend Trade Secrets Act (DTSA) claim against Finalis. The Court found that Plaintiff adequately alleged protectable trade secrets but concluded that Finalis itself did not "use, disclose, or acquire" them. Plaintiff submits that the detailed facts in the First Amended Complaint (FAC) show that Finalis knowingly facilitated, endorsed, and benefited from the misappropriation in a manner cognizable under the DTSA.

Under 18 U.S.C. § 1839(5), a plaintiff states a claim where it plausibly alleges both the existence of a trade secret and the defendant's misappropriation of that secret through acquisition, disclosure, or use, with knowledge or reason to know of the improper means of its acquisition. *See Medidata Sol. Inc. v. Veeva Sys. Inc.,* No. 17 Civ. 589 (LGS), 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018). Here, Plaintiff's complaint describes how Finalis, a FINRA-registered broker-dealer, signed a Placement Agent Agreement ("PAA") promising to maintain Plaintiff's highly confidential materials in strict confidence. (FAC ¶¶ 38–47.) These materials included financial models, investor contacts, marketing plans, and due diligence protocols—information that Plaintiff spent considerable time and effort developing for its EB-5 oil-and-gas offerings. (FAC ¶¶ 26–29, 105–108.). This Court accepted (or at least did not reject) Plaintiff's showing that it possessed protectable trade secrets. (Order at 15–16.). The Court, however, found insufficient allegations that Finalis "used, disclosed, or acquired the trade secrets." *Id*. However, the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means constitutes misappropriation." *Id.* (citing 18 U.S.C. § 1839(5)(A)).

4

The FAC alleges that co-defendants Reuss and Cheema exploited these materials, launching a mirror-image EB-5 fund that mirrored Plaintiff's model, diverted potential investors, and used the stolen know-how to gain an unfair head start. (FAC ¶¶ 50–59, 71–79.) Finalis, according to the complaint, enabled the misappropriation by granting its broker-dealer status and endorsement to the rival venture, collecting substantial fees from the same investors who were effectively steered away from Plaintiff's offering. (FAC ¶¶ 80–88.) Although the Court described Finalis's role as "broker-dealer alone," the FAC states a deeper involvement: Finalis not only gave Reuss and Cheema the regulatory platform they needed to solicit EB-5 investors, but it also allegedly turned a blind eye once notified that Plaintiff's proprietary information was being misused. Plaintiff contends that without Finalis's continuing support, the rival fund would have lacked credibility and the capacity to divert Plaintiff's investors. These alleged facts, if accepted as true, supply a basis for DTSA liability because Finalis's actions constitute knowing participation in and facilitation of the improper acquisition and use of Plaintiff's trade secrets.

The Court's dismissal focused on the absence of direct allegations that Finalis itself downloaded or disclosed the trade secrets. Plaintiff respectfully submits that the DTSA's definition of "misappropriation" extends beyond personal, hands-on theft. Indeed, it includes acquisition, use, or disclosure by a party that knows or has reason to know the secrets were obtained by improper means. In *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.,* No. 15 Civ. 211 (LGS) (RLE), 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016), the court recognized that a defendant may misappropriate secrets by inducing or benefiting from another's breach of confidentiality. Likewise, in *Q–Co Indus., Inc. v. Hoffman,* 625 F. Supp. 608, 618 (S.D.N.Y. 1985), the court noted that misappropriation can rarely be shown by direct evidence alone, but may be inferred from circumstantial facts and concerted actions.

5

Here, Plaintiff alleges that Finalis entered into a Placement Agent Agreement that expressly incorporated strict confidentiality obligations (FAC ¶¶ 38–47), then introduced Plaintiff's proprietary information to Reuss and Cheema, who used it to create a competing EB-5 oil-and-gas platform. (FAC ¶¶ 50–54, 71–79.) Finalis is alleged to have known or should have known of Reuss's conflict of interest given its FINRA-required supervisory systems (FAC ¶¶ 32–36, 57–59) and to have continued serving as the broker-dealer, even after Plaintiff raised concerns about the theft. (FAC ¶¶ 81–83.) By enabling Reuss and Cheema to market essentially the same offering to the same pool of investors, Finalis stood to collect trailing fees from diverted investments—investments it knew or should have known were generated from Plaintiff's trade secrets. (FAC ¶¶ 84–88.) These allegations go far beyond a mere assertion that Finalis negligently supervised Reuss. Rather, they describe an intentional or recklessly indifferent collaboration in which Finalis profited from a rival enterprise that depended on the use of Plaintiff's stolen data.

When read as a whole, these facts support an inference that Finalis deliberately gave Reuss the regulated platform needed to solicit investors, allowed him to adopt Plaintiff's confidential information, and continued to receive ongoing compensation from the competing fund. That conduct, if proven, amounts to knowing participation in "acquisition or use" of misappropriated trade secrets under the DTSA. Because the Court's prior ruling did not appear to consider how these alleged facts satisfy the statutory definitions of "acquisition" and "use," reconsideration is warranted.

Finally, since filing the FAC, Plaintiff has learned that Finalis no longer acts as broker-dealer for the rival offering. Though Finalis might claim that this change moots any DTSA claim, Plaintiff respectfully submits that it further validates the allegations that Finalis withdrew only once faced with litigation. Indeed, the Supreme Court has recognized that a defendant's voluntary

6

cessation of unlawful conduct does not suffice to moot an issue. *See United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)) In any event, this lawsuit will continue against any parties implicated in the ongoing injury to Plaintiff's business model, which remains compromised by the disclosure of its confidential trade secrets to the EB-5 marketplace.

B.  **The DTSA Does Not Require Direct "Use" or "Theft" Where the Defendant Facilitates and Benefits from Misappropriation**

Courts interpreting the DTSA recognize that an entity may be held liable for misappropriation even if it never physically possesses the trade secrets. The statutory language expressly covers any person who "knows or has reason to know" that the information was acquired by improper means and still engages in acts that constitute "use" or "acquisition." 18 U.S.C. § 1839(5). In *eShares, Inc. v. Talton,* 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024), the court explained that the statute contemplates misappropriation by one who, while not the original thief, knowingly benefits from the theft. Similarly, in *Better Holdco, Inc. v. Beeline Loans, Inc.,* 666 F. Supp. 3d 328, 389 (S.D.N.Y. 2023), the court reaffirmed that a DTSA claim can proceed where a defendant "knew or had reason to know" the secrets at issue were taken through improper means and used them to gain a commercial advantage.

In this case, Plaintiff alleges that Finalis was aware or should have been aware of Reuss's and Cheema's misuse of Plaintiff's information. (FAC ¶¶ 82–83.) Rather than revoking the broker-dealer endorsement or ceasing collaboration, Finalis remained the registered broker-dealer for the rival offering and continued collecting fees on each new investor. (FAC ¶¶ 84–88.) Because Plaintiff's information formed the foundation of that offering, any new investment was, in Plaintiff's view, a direct benefit reaped from the improperly acquired data. By continuing to profit

7

from and facilitate the new fund after it was notified of the misappropriation, Finalis became an active participant in the ongoing exploitation of Plaintiff's secrets. That scenario falls within the DTSA's rubric of misappropriation through "acquisition" or "use" under 18 U.S.C. § 1839(5), and plausibly states a claim against Finalis.

Finally, Plaintiff notes that the remaining Defendants—EB5 Energy Fund I, LP, EB5 Marketplace, and Kurt Edward Reuss—have separately moved to dismiss or compel arbitration. (*See* Dkt. 55.) Regardless of the outcome of that motion, this action will continue against any Defendants not subject to arbitration, particularly if Finalis remains in the litigation. Plaintiff also observes that the involvement of the other Defendants underscores the plausibility of Finalis's alleged facilitation of misappropriation, because Finalis's broker-dealer endorsement was central to those Defendants' ability to solicit EB-5 investors, including those diverted away from Plaintiff's offering.

### C.     Leave to Amend.

In the event the Court refuses to grant Plaintiff's motion for reconsideration, Plaintiff respectfully requests the opportunity to file an amended pleading. The Court has discretion to grant Plaintiff leave to amend and leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). As the Supreme Court has held, the policy of liberal amendment is a "mandate to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is well settled that the "Second Circuit has repeatedly emphasized that a plaintiff should be given an opportunity to amend with the benefit of the court's reasoning. ('Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.')" *Henry v. Fox News Network LLC,* 2022 U.S. Dist. LEXIS 169928, *33-34 (S.D.N.Y. Sep. 20, 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797

F.3d 160, 190 (2d Cir. 2015)); *see also Cresci v. Mohawk Valley Cmty. Coll.,* 693 F. App'x 21, 25 (2d Cir. 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously."). Here, there is no reason for the Court to deny Plaintiff leave to amend its pleading. It is apparent from the timing of the motion—filed shortly after the First Amended Complaint was dismissed—that there has been no undue delay or bad faith. It is also apparent that the opposing parties cannot possibly suffer undue prejudice as the amended pleading would simply cure deficiencies set forth by the Court in its Order.

Accordingly, granting Plaintiff leave to amend would be consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd.* at 190.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests reconsideration of the Court's March 26, 2025 Opinion and Order. (Dkt. 77), or in the alternative, grant Plaintiff leave to amend its First Amended Complaint.

Dated: New York, New York
April 9, 2025

                                            **GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**

                                 By:  */s/ Michael Steinmetz*
                                        Michael Steinmetz
                                        164 West 25th Street, 11th Fl.
                                        New York, NY 10001
                                        Tel: (212) 380-3623
                                        Fax: (212) 537-4540
                                        Email: ms@gs2law.com

                                        *Attorneys for Plaintiff*

Case 1:24-cv-02565-ER   Document 79   Filed 04/10/25   Page 15 of 15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of April, 2025, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, LEAVE TO AMEND was electronically filed through the CM/ECF system and thereby, automatically served on all registered parties.

*/s/ Michael Steinmetz*
Michael Steinmetz